IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| RONNIE HERNANDEZ, on Behalf of Himself and on Behalf of All Others Similarly Situated,<br><br>*Plaintiff*,<br><br>v.<br><br>SPARTAN COMPANIES, LLC,<br><br>*Defendant*. | CIVIL ACTION: 1:20-CV-895-RP |

**JOINT MOTION FOR APPROVAL OF**
**FAIR LABOR STANDARDS ACT SETTLEMENT**

Plaintiff Ronnie Hernandez, on behalf of himself and on behalf of all others similarly situated, ("Plaintiff") and Spartan companies, LLC ("Defendant") file this Joint Motion for Approval of Settlement and would respectfully show the Court the following:

## I.   INTRODUCTION

Plaintiff and Defendant have reached a settlement of the pending dispute concerning unpaid overtime wages under the Fair Labor Standards Act, 29 U.S.C § 201 *et seq.* ("FLSA"). The settlement provides current and former employees who were alleged to have been misclassified as independent contractors compensation for their overtime claims. Indeed, the settlement provides for the payment of 100% of the back wages due to the Plaintiff and Collective Action Members as calculated from the time records and pay records produced by Defendant.

On June 16, 2020, Plaintiff Ronnie Hernandez filed this collective action lawsuit. The central allegation was that Defendant misclassified its welders as independent contractors instead of as employees, thereby denying overtime compensation for all hours worked over 40 in a workweek. (Doc. 1).

1

During the discovery period, the Parties exchanged significant information as to the claims of the Plaintiff and Collective Action Members and the defenses raised by Defendant. Defendant provided Plaintiffs' Counsel with time records for the Collective Action Members during the relevant period covered by this lawsuit. Using these records, the Parties calculated the damages they believed could be available to the Collective Action Members.

Shortly thereafter, the Parties engaged in extensive settlement talks. The Parties discussed the strengths and weaknesses of Plaintiff's claims, Defendant's defenses, and the damages that could be available should Plaintiff prevail. As a result of those negotiations, the Parties reached a collective action settlement on behalf of the following class:

> **All current and former welders employed by Company and classified as Independent Contractors from June 16, 2018 to the present, excluding a) welders that invoiced and were paid through an entity, and b) welders paid on a piece rate basis.**

The settlement at issue resolves the claims of the Plaintiff and each Collective Action Member who chooses to participate in this settlement. The settlement agreement is attached hereto as Exhibit "1."

## II.   ARGUMENTS AND AUTHORITIES

"Ordinarily there [is] no need" for the Court to approve the settlement of a "dispute between employer and employees [because] people may resolve their own affairs, and an accord and satisfaction bars a later suit." *Walton v. United Consumer Club, Inc.*, 786 F.2d 303, 306 (7th Cir. 1986). However, this case involves claims for unpaid overtime wages brought pursuant to the FLSA, which is "designed to prevent consenting adults from transacting about minimum wages and overtime pay." *Id.* "Courts therefore have refused to enforce wholly private settlements." *Id., citing Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352 (11th Cir. 1982).

Instead, most courts recognize only two valid ways by which an individual can release or

settle a FLSA claim: (1) a DOL-supervised settlement under 29 U.S.C. § 216(c); or (2) a court-approved stipulation of settlement. *Lynn's Food Stores,* 679 F.2d at 1353; *Jarrard v. Southeastern Shipbuilding Corp.,* 163 F.2d 960 (5th Cir. 1947) (enforcing a state court stipulated judgment entered upon disputed issues of both law and fact as *res judicata* to bar a federal FLSA suit). Settlements in the context of litigation, where there are bona fide issues in dispute and where employees are represented by "an attorney who can protect their rights under the statute" are subject to approval by district courts "in order to promote the policy of encouraging settlement of litigation." *Lynn Food*, 679 F.2d at 1354.

When reviewing a proposed FLSA settlement, the district court must "scrutiniz[e] the settlement for fairness" and decide whether the proposed settlement is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Lynn's Food*, 679 F.2d at 1353, 1355. The endorsement of a proposed FLSA settlement by counsel for both parties is a "factor that weighs in favor of approval" of an FLSA settlement agreement because "counsel for each side possess[es] the unique ability to assess the potential risks and rewards of litigation." *Quintanella v. A&R Demolition, Inc.*, 2008 U.S. Dist. LEXIS 37449, at *14 (S.D. Tex. May 7, 2008).

The Parties agree that the settlement is fair and represents a reasonable compromise of the disputed issues in this case.

### A.   The terms of the settlement provide for substantial compensation for the claims raised in the lawsuit.

The Parties' settlement is fair and reasonable and provides fair compensation to the Plaintiff and Collective Action Members. The damages were calculated based upon the actual records showing the number of hours worked by the Plaintiff and Collective Action Members and their rates of pay. Using this information, the amounts owed during the statutory period were calculated for each Plaintiff and Collective Action Member for each week that they worked.

The total amount owed for each individual was then added together to determine the amount owed to the Class.  **The settlement provides for 100% compensation to the Collective Action Members.**  That is, Defendant has agreed to pay the full amount owed to each Collective Action Member.

The recovery reached in the Settlement Agreement is also significant given that the Parties disagreed over the merits of the case.  Plaintiff argued that he and the Collective Action Members were underpaid because they were misclassified as independent contractors instead of as employees. Defendant countered that these workers were properly classified as independent contractors and not entitled to any additional wages.  Due to the directly conflicting factual allegations and differing views on the applicable law, the Parties believe that the amounts reflected in the Settlement Agreement are in the best interest of the Collective Action Members.

More importantly, the settlement allows the Parties to resolve the claims at issue without the necessity or delay of trial and possible appeals.  In exchange for these payments, the Plaintiff and Collective Action Members will agree to release Defendant from any and all claims they may have related to wages, back pay, and overtime.

**B.**     **The settlement is fair and reasonable in light of the uncertainty of the outcome.**

The proposed Settlement Agreement is fair to the Plaintiff and Collective Action Members because it provides for a settlement with damages based upon the actual records for each Collective Action Member, with each person allocated a separate amount based upon his/her dates of employment, hours worked, and total pay.

The recovery reached in the Settlement Agreement is also significant given that the Parties disagreed over the merits of the case.  In the Fifth Circuit there is conflicting authority as to whether welders are employees or independent contractors.  At all times, Defendant maintained that the

Plaintiff and Collective Action Members were properly classified as independent contractors. Further, the Parties disagreed as to whether the Plaintiff could satisfy his burden to demonstrate that Defendant acted willfully, which in turn affects whether Plaintiff/Class Members could recover damages for two (2) years or three (3) years prior to the filing of the Complaint. *See* 29 U.S.C. § 255.  The Parties also disagreed as to whether Defendant would satisfy its burden of proving good faith and reasonableness and, consequently, the extent to which liquidated damages could be awarded in the case.  Due to the conflicting factual allegations and the legal claims, the Parties believe that a settlement is in the best interest of all Parties.

### C. The Parties have agreed on a fair and reasonable notice plan to administer the settlement.

The Parties have agreed to self-administer this settlement.  Defendant will provide a list of all potential Opt-In Plaintiffs to Plaintiff's Counsel. Plaintiff's Counsel will then send a copy of the FLSA Settlement Notice to all potential Opt-In Plaintiffs via first-class mail and via email. Plaintiff's Counsel shall also send a reminder notice to all Opt-In Plaintiffs who have not yet submitted a Claim Form thirty days after the initial mailing of the FLSA Settlement Notice. The deadline to make a claim is sixty days from the date the FLSA Settlement Notice is mailed.

During the claims period, each Collective Action Member will have the right to claim their unpaid wages.  They simply need to fill out the claim form and return it by the deadline.  It is also important to note that if a Collective Action Member does not return a claim form, his/her claims will not be affected by this lawsuit.

### D. The attorneys' fees sought are fair and reasonable.

The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action."  29 U.S.C. § 216(b).   The amount sought by Plaintiff's Counsel for attorneys' fees is fair

and reasonable. Plaintiff's Counsel is seeking 30% for attorney's fees and costs. The fees and costs are in addition to the amount being paid to the Plaintiff and Collective Action Members. That is, Defendant is paying 100% of the back wages to the Plaintiff and Collective Action Members and an additional 30% to Plaintiff's Counsel.

When evaluating a claim for fees, **a party's success in the litigation is the "most critical."** *Hensley v. Eckerhart,* 461 U.S. 424, 436 (1983). In determining the reasonableness of the requested attorney's fee, the court in *Shaw v. Toshiba America Information Systems, Inc.*, 91 F. Supp. 2d 942 (E.D. Tex. 2000) considered the comparative data about Rule 23 class settlements summarized by the National Economic Research Associates. The NERA Study relied upon by the *Shaw* Court showed that the average result achieved for Collective Action Members was only **7% to 11% of claimed damages**. Measured against that standard, the settlement in this case is much higher. Under Plaintiff's theory of the case, Plaintiff's Counsel has prevailed in securing 100% compensation for the Plaintiff and Collective Action Members. Under Defendant's theory, the Collective Action Members would be owed zero. This demonstrates full success by Plaintiff's Counsel.

Here, Plaintiff's Counsel investigated the claims, analyzed pay data, conducted legal research, and performed other work that resulted in a settlement. Furthermore, the legal theories involved required substantial expertise in the wage and hour field. Many attorneys would not have understood the nuanced arguments asserted, nor would they have been able to discern whether the Plaintiff and Collective Action Members even had viable claims. Thus, the work of Plaintiff's Counsel provided a significant benefit to the Collective Action Members.

## E.   The settlement should be approved by the Court.

The terms of the settlement have been approved by Plaintiff, his counsel, Defendant, and Defendant's counsel. The settlement was negotiated at arms' length by experienced counsel. The Parties entered into the Settlement Agreement voluntarily and knowingly. The Parties agree that the terms of the Settlement Agreement are reasonable, fair and just, and they settle all claims in this lawsuit.

In determining whether the settlement is fair and reasonable, the Court should note that "there is a 'strong presumption in favor of finding a settlement fair.'" *Domingue v. Sun Elec. & Instrumentation, Inc.*, 2010 WL 1688793, at *1 (M.D. La. 2010) (*citing Camp v. Progressive Corp.*, 2004 WL 2149079, at *5 (E.D. La. 2004)). Moreover, "that th[e] settlement is the negotiated result of an adversarial proceeding is an indication of its fairness." *Id.*

The settlement here was negotiated by attorneys who have been vigorously prosecuting and/or defending this and similar claims for many years. Both sides have considerable experience in prosecuting, defending, and settling federal and state wage and hour claims previously, and, in this case, were particularly well informed as to the facts and circumstances of the litigation.

After the Parties reached an agreement on the settlement, the Parties engaged in extensive negotiations concerning the specific terms of the settlement and the scope of the release. The settlement documents ultimately approved and executed by the Parties are the result of very comprehensive discussions, as well as exhaustive and hard-fought negotiations.

Ultimately, there can be no question that this Settlement Agreement represents fair value for the Collective Action Members. Each Collective Action Member will be entitled to receive back wages under federal law without the risk or expense of trial. Indeed, the amounts recovered under the settlement are fair on both a collective and individual basis.

### III.   CONCLUSION

The terms of the settlement have been approved by Plaintiff, his counsel, Defendant, and Defendant's counsel.  The settlement was negotiated at arms' length by experienced counsel. The Parties entered into the Settlement Agreement voluntarily and knowingly.  The Parties agree that the terms of the Settlement Agreement are reasonable, fair and just, and they settle all claims in this lawsuit. Accordingly, the Parties jointly request that the Court approve the FLSA settlement.

For the foregoing reasons, the Parties respectfully request that the Court enter an order approving the Parties' Settlement Agreement. A proposed Order is attached for the Court's consideration.

Respectfully submitted,

| | |
|---|---|
| */s/ Don J. Foty*_____ | */s/ Alan L. Busch*_____ |
| Don J. Foty | Alan L. Busch |
| dfoty@hftrialfirm.com | busch@buschllp.com |
| State Bar No. 24050022 | State Bar No. 03491600 |
| Hodges & Foty, LLP | Robert Ruotolo |
| 4409 Montrose Blvd., Suite 200 | ruotolo@buschllp.com |
| Houston, Texas 77006 | State Bar No. 17398700 |
| Telephone: 713.523.0001 | 1700 Pacific Ave., Ste. 2320 |
| Facsimile:   713.523.1116 | Dallas, TX 75201 |
| | Telephone: (214) 855-2880 |
| **ATTORNEY FOR PLAINTIFF AND** | |
| **COLLECTIVE ACTION MEMBERS** | **ATTORNEYS FOR DEFENDANT** |
| | **SPARTAN COMPANIES, LLC** |

## **CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of this document has been filed with the Court's electronic case filing system on March 9, 2022 which will forward a copy to Defendant.

                                              */s/     Don J. Foty*
                                              Don J. Foty